IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


PATTI IMLAY,                    )
                               )
Plaintiff,                     )
                               )          CIVIL ACTION
v.                             )
                               )          No. 06-4002-SAC-JTR
                               )
JO ANNE B. BARNHART,           )
Commissioner of                )
Social Security,               )
                               )
     Defendant.                )
                               )
_____)


**REPORT AND RECOMMENDATION**

Plaintiff seeks review of a final decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) under sections 216(i) and 223 of the Social Security Act.  42 U.S.C. §§ 416(i) and 423 (hereinafter the Act).  The matter has been referred to this court for a report and recommendation.  The court recommends the Commissioner's decision be REVERSED and the case be REMANDED for further proceedings in accordance with this opinion.

1

## I.   Background

Plaintiff's application for DIB was denied initially and upon reconsideration.  (R. 12, 25, 26).  Plaintiff sought and was granted a hearing before an Administrative Law Judge (ALJ) at which she was represented by counsel.  (R. 12, 40-41, 46-52, 423-44).  At the hearing, plaintiff, her husband, and a vocational expert testified.  (R. 423-44).  Plaintiff amended her alleged onset date to Feb. 28, 2002, her last day of work.  (R. 12, 426).

The ALJ issued a decision Jun. 9, 2005, finding plaintiff is able to perform her past relevant work as a (armature) winder and as a convenience store clerk.  (R. 12-24).  Alternatively, the ALJ determined that there are a significant number of jobs available in the economy of which plaintiff is capable.  (R. 23, 24).  Therefore, he found plaintiff is not disabled within the meaning of the Act, and denied her application for benefits.  (R. 23, 24).

In particular, the ALJ determined plaintiff has not performed substantial gainful activity after her alleged onset date.  (R. 13).  He found plaintiff has severe impairments consisting of degenerative disc disease, cervical spondylosis, and bilateral shoulder strain status/post left shoulder repair.  (R. 15).  He found that plaintiff does not have a severe mental impairment and

2

that the "evidence does not show that she has a severe headache impairment." (R. 16-17). The ALJ specifically considered listings 1.02, 1.04, and 1.08 of the Listing of Impairments and determined that plaintiff does not meet or medically equal the severity of any listed impairment. (R. 17).

The ALJ next assessed plaintiff's residual functional capacity (RFC). (R. 17-22). He evaluated plaintiff's allegations of disabling symptoms and determined they are not credible. (R. 18-19). He evaluated the medical opinions of Drs. Carabetta, Davis, Wallace, Baker, Geis, and Hendler. (R. 20-22). He concluded that plaintiff is able to lift or carry ten pounds frequently and twenty pounds occasionally; to sit, and stand or walk up to six hours each in a workday; and has non-exertional limitations "precluding above shoulder living [sic (presumably "lifting")], overhead work, repetitive twisting or bending of the neck, crawling, and ladder, rope, and scaffold climbing." (R. 19).

Based upon this RFC assessment, the ALJ determined that plaintiff is able to perform her past relevant work as a winder or as a convenience store clerk. (R. 22). Alternatively, he determined that plaintiff is able to perform a range of light work

illustrated by work such as a photocopier, a storage rental clerk, an order clerk, or an electronics tester. (R. 22-23). Therefore, he concluded that plaintiff is not disabled within the meaning of the Act, and denied her application for DIB. (R. 23, 24).

Plaintiff requested and was denied Appeals Council review of the ALJ's decision. (R. 5-7, 421-22). Therefore, the ALJ's decision is the final decision of the Commissioner, subject to judicial review. (R. 5); Threet v. Barnhart, 353 F.3d 1185, 1187 (10th Cir. 2003). Plaintiff now seeks judicial review.

## II. Legal Standard

The court's review is guided by the Act. 42 U.S.C. § 405(g). "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." Id. The court must determine whether the findings are supported by substantial evidence in the record and whether the correct legal standard was applied. White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but less than a preponderance, and is satisfied by such evidence as a reasonable mind might accept to support the conclusion. Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [it's] judgment for that of

4

the agency." White, 287 F.3d at 905 (quoting Casias v. Sec'y of

Health & Human Serv., 933 F.2d 799, 800 (10th Cir. 1991)).

However, the determination of whether substantial evidence

supports the Commissioner's decision is not simply a quantitative

exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it constitutes mere conclusion.  Gossett, 862

F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

     An individual is under a disability only if she can establish

that she has an impairment which prevents her engaging in

substantial gainful activity and is expected to result in death or

to last for twelve months.  The impairment must be of such

severity that claimant is not only unable to perform her previous

work, but cannot, considering her age, education, and work

experience, engage in any other substantial gainful work existing

in the national economy.  42 U.S.C. § 423(d).

     The Commissioner has established a five-step sequential

process to evaluate whether a claimant is disabled.  20 C.F.R. §

404.1520 (2005); Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir.

2004); Ray, 865 F.2d at 224.  "If a determination can be made at

any of the steps that a claimant is or is not disabled, evaluation

under a subsequent step is not necessary." Williams v. Bowen, 844

F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the onset of her disability, whether she has severe impairments, and whether the severity of her impairments meets or equals any listing in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Id. at 750-51.  If plaintiff's impairment does not meet or equal a listed impairment, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the process.  Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five, whether the claimant can perform her past relevant work, and whether she is able to perform other work in the national economy.  Williams, 844 F.2d at 751.  In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show other jobs in the national economy within plaintiff's capacity. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ committed numerous errors in his

6

decision.  She claims he erred:  (1) at step two in finding that
plaintiff's headache's are not severe within the meaning of the
Act; (2) in assessing RFC by failing to apply the correct legal
standard to the credibility determination and making credibility
findings that are not supported by substantial evidence, by
failing to evaluate the credibility of plaintiff's husband's
testimony, and by failing to properly evaluate the treating
physician's opinion; (3) at step four because he merely adopted
the conclusory opinion of the vocational expert (VE) rather than
making findings regarding the demands of plaintiff's past relevant
work; and (4) at step five by accepting VE responses to
hypothetical questions which are not supported by substantial
evidence.  The Commissioner argues that the ALJ's finding that
plaintiff's headache's are not "severe" is supported by
substantial evidence; that the ALJ applied the correct legal
standard in his evaluation of credibility including plaintiff's
husband's testimony, and, with the exception of two facts relied
upon by the ALJ, the credibility evaluation is supported by
substantial evidence in the record; that the ALJ properly assessed
plaintiff's RFC, and properly weighed the medical
opinions--including those of plaintiff's family practitioner; that

7

the ALJ properly evaluated the step four determination regarding

past relevant work; and that the ALJ properly relied upon the VE

testimony regarding work available to someone with plaintiff's

capacities.  The court will address the arguments in order as they

would be reached in applying the sequential evaluation process.

**III. Step Two--Whether Plaintiff's Headaches Are Severe**

Plaintiff claims the ALJ erred at step two because "the

evidence clearly shows that Plaintiff's headaches have more than a

minimal impact on her ability to function." (Pl. Br., 25).  The

Commissioner argues that the step two finding was proper and is

supported by substantial evidence in the record.  (Comm'r Br., 4).

**A.**    **Standard Applied at Step Two**

An impairment is not severe if it does not significantly

limit plaintiff's ability to do basic work activities such as

walking, standing, sitting, carrying, understanding simple

instructions, responding appropriately to usual work situations,

and dealing with changes in a routine work setting.  20 C.F.R.

§ 404.1521.  The Tenth Circuit has interpreted the regulations and

determined that to establish a "severe" impairment at step two of

the sequential evaluation process, plaintiff must make only a "de

minimis" showing.  Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir.

1997).  Plaintiff need only show that an impairment would have more than a minimal effect on her ability to do basic work activities.  Williams, 844 F.2d at 751.  However, she must show more than the mere presence of a condition or ailment.  Id. (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)).  If an impairment's medical severity is so slight that it could not interfere with or have a serious impact on plaintiff's ability to do basic work activities, it could not prevent plaintiff from engaging in substantial work activity and will not be considered severe.  Hinkle, 132 F.3d at 1352.

**B.    Discussion**

The ALJ noted that plaintiff's testimony of headache pain lasting days at a time was inconsistent with her report during a vocational assessment that she only had severe headaches twice a week with no hearing or visual problems, and which resolved in two hours after using a heating pad.  (R. 16-17).  He concluded, "The evidence does not show that she has a severe headache impairment." Plaintiff argues that the ALJ "abstracted the evidence to elicit a contradiction," and plaintiff makes much of the fact that the Vocational Rehabilitation Specialist (vocational source, hereinafter "VS") who performed the "vocational assessment" at

issue stated that plaintiff has three or four headaches a week,
that "on two occasions per week these headaches will become very
severe," and that plaintiff relaxes in a recliner with a heating
pad which "will resolve her headaches after about two hours."
(Pl. Br., 24) (quoting (R. 142)).  The court disagrees with
plaintiff's characterization that the ALJ abstracted the evidence,
and finds that the ALJ appropriately summarized the evidence at
issue.  The ALJ need not parrot the words of a specialist in
summarizing the evidence,  The court finds no material difference
between the ALJ's summary and the VS's report.

Plaintiff argues that the evidence clearly shows her
headaches have "more than a minimal impact on her <u>ability to
function</u>."  (Pl. Br., 25) (emphasis added).  While plaintiff's
statement may (or may not) be correct, the standard stated is not
the standard applied at step two.  As discussed above, the correct
standard is whether plaintiff's impairment would have more than a
minimal effect on her <u>ability to do basic work activities</u>.
<u>Williams</u>, 844 F.2d at 751.  Plaintiff cites much evidence in the
record demonstrating that she has headaches, has reported the
headaches to medical personnel, and has been treated for those
headaches.  (Pl. Br., 25) (citing (R. 207, 256, 257, 263, 272,

10

273, 321, 386, 391, 406, 414, 416, 418)).  With the exception of
her sinus surgery, which was done eight months before her amended
alleged onset date (R. 206-11), none of these citations reveals
any specific affect on plaintiff's <u>ability to do basic work
activities</u>.  The burden at step two to show a "severe" impairment
is on plaintiff.  <u>Williams</u>, 844 F.2d at 751.  As the ALJ found,
"The evidence does not show that she has a severe headache
impairment."  (R. 17).  Plaintiff has not met her burden to show
evidence that headaches have more than a minimal affect on her
ability to perform basic work activities.

## IV.  Evaluation of Medical Opinions

Plaintiff claims the ALJ erred in evaluating the medical
opinions of her family practitioner, Dr. Davis.  She argues the
ALJ gave only three reasons to discount Dr. Davis's opinion, and
that those reasons are not supported by substantial evidence and
are insufficient to overcome the weight to be given a treating
physician's opinions.  She also claims the ALJ gave inappropriate
weight to the opinions of other treating and examining physicians
and failed to give weight to the opinion of a vocational source
(VS), Mr. Bud Langston.  The Commissioner argues that the ALJ
properly evaluated the medical opinions and substantial evidence

11

in the record supports the ALJ's findings.  She also argues that

Mr. Langston in not an acceptable medical source and that his

opinions regarding plaintiff's ability to work are findings

reserved to the discretion of the ALJ.

### A.    Standard for Evaluating Medical Opinions

"Medical opinions are statements from physicians and

psychologists or other acceptable medical sources that reflect

judgments about the nature and severity of [a claimant's]

impairment(s) including [claimant's] symptoms, diagnosis and

prognosis."  20 C.F.R. § 404.1527(a)(2).  Such opinions may not be

ignored and will be evaluated by the Commissioner in accordance

with factors contained in the regulations.  Id. § 404.1527(d);

Soc. Sec. Ruling (SSR) 96-5p, West's Soc. Sec. Reporting Serv.,

Rulings 123-24 (Supp. 2006).  A physician who has treated a

patient frequently over an extended period of time is expected to

have greater insight into the patient's medical condition.  Doyal

v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).  "The opinion of

an examining physician who only saw the claimant once is not

entitled to the sort of deferential treatment accorded to a

treating physician's opinion."  Id. at 763 (citing Reid v. Chater,

71 F.3d 372, 374 (10th Cir. 1995)).  Opinions of examining

12

physicians are given more weight than the opinions of physicians who have merely reviewed the medical record.  <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1084 (10th Cir. 2004); <u>Talbot v. Heckler</u>, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing <u>Broadbent v. Harris</u>, 698 F.2d 407, 412 (10th Cir. 1983), <u>Whitney v. Schweiker</u>, 695 F.2d 784, 789 (7th Cir. 1982), and <u>Wier ex rel. Wier v. Heckler</u>, 734 F.2d 955, 963 (3d Cir. 1984)).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence in [claimant's] case record, [she] will give it controlling weight." 20 C.F.R. § 404.1527(d)(2); <u>see also</u>, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2006).

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion.  <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300-01 (10th Cir. 2003).  First, the ALJ determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" <u>Id</u>. at 1300 (quoting SSR 96-2p).  If the opinion is well-supported, the

ALJ must determine whether the opinion is consistent with other evidence in the record.  Id. (citing SSR 96-2p).  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  Id.

If a treating source opinion is not given controlling weight, the inquiry does not end.  Id.  A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927."  Id.  Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. § 404.1527(d)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Serv., 52 F.3d 288, 290 (10th Cir. 1995)).

The ALJ must give reasons in the decision for the weight he gives the treating source opinion.  <u>Id</u>. 350 F.3d at 1301.  "If the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so."  <u>Id.</u>  (citing <u>Miller v. Chater</u>, 99 F.3d 972, 976 (10th Cir. 1996) (quoting <u>Frey v. Bowen</u>, 816 F.2d 508, 513 (10th Cir. 1987)).

**B.**   **The Decision**

In making his RFC assessment, the ALJ explained his evaluation of the medical opinions of three treating physicians and three examining physicians.  (R. 20-22).  The ALJ found the opinion of plaintiff's family practitioner, Dr. Davis, inconsistent with (1) Dr. Davis's objective findings and with (2) "the essentially negative findings of any other examining source."  (R. 21).  Based on these findings, the ALJ explained he had not given Dr. Davis's opinion controlling weight.  <u>Id.</u>

He then found Dr. Davis's opinion (3) is inconsistent with functional capacity evaluations in the record, (4) is inconsistent with the opinions of orthopedic sources, none of whom stated a need to lie down, (5) is inconsistent with the medical evidence which was essentially negative, and (6) appears to be based entirely on claimant's subjective allegations.  Id.  He concluded,

15

stating, "Dr. Davis' opinion has not been given substantial weight." Id.  He then explained there was no need to recontact Dr. Davis because, although not persuasive, Dr. Davis's records were adequate to make a decision regarding disability.  Id.

The ALJ accepted the opinion of treating physician, Dr. Carabetta, that plaintiff could continue to work, but rejected the ten-pound lifting restriction proposed by Dr. Carabetta because later medical evidence established improvement allowing lifting greater than ten pounds.  (R. 20).  He explained that he gave substantial weight to the opinions of treating physician, Dr. Wallace, and examining physician Dr. Baker who found plaintiff cannot reach overhead or lift above her shoulders, but, because of exacerbation of plaintiff's pain when lifting, determined plaintiff can occasionally lift only twenty pounds rather than thirty-five pounds as opined by these physicians.  (R. 21).  The ALJ noted that the opinion of examining physician, Dr. Geis, is "essentially consistent" with the ALJ's RFC assessment and was given substantial weight.  (R. 22).  Finally, the ALJ gave substantial weight to the opinion of examining physician, Dr. Hendler, regarding a limitation on overhead reaching.  Id.

**C.   Discussion**

16

The court finds that the ALJ applied the correct legal standard in evaluating the medical opinions and has supported his evaluation with substantial evidence in the record.  Contrary to plaintiff's argument, the ALJ gave six reasons, not three, for discounting Dr. Davis's opinion.  Plaintiff asserts the ALJ considered only two of Dr. Davis's treatment notes and that Dr. Davis's limitations are supported by his treatment notes--pointing to findings such as muscle spasm, limitation of range of motion, headaches, etc.  (Bl. Br., 39).  However, the ALJ need not discuss every piece of evidence.  Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (citing Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984)).  In making his decision, he must consider all the evidence, and discuss the evidence supporting his decision, the uncontroverted evidence upon which he chooses not to rely, and significantly probative evidence he rejects.  Id.  He may not, however, selectively abstract evidence in support of his decision and ignore evidence supportive of plaintiff's allegations.  Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

Here, the decision reveals the ALJ considered all of the evidence and determined that Dr. Davis's opinion is not supported

17

by his objective findings.  The evidence cited by plaintiff

indicates that Dr. Davis noted some symptoms that were not

"normal," but they do not necessarily demonstrate restrictions

consistent with the severity of those opined by Dr. Davis.  The

mere fact that there is evidence which might support a finding

contrary to that of the ALJ will not establish error in the ALJ's

determination.  "[T]he possibility of drawing two inconsistent

conclusions from the evidence does not prevent an administrative

agency's findings from being supported by substantial evidence."

Cruse v. Bowen, 867 F.2d 1183, 1184 (8th Cir. 1989) (quoting

Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966)).

Plaintiff asserts the ALJ gave excessive weight to the

opinions of Drs. Carabetta and Wallace because they were treating

plaintiff only relevant to her workers compensation claim and

because their opinions do not relate to her other impairments.

While it is true these physicians were not plaintiff's primary

care physicians, the court finds no indication in the record they

ignored some of plaintiff's symptoms or failed to consider her

entire condition when stating their opinions relative to

plaintiff's capacities.  These physicians are orthopedic

specialists who treated plaintiff and stated their opinions

18

regarding her capacities during and after that treatment.

Plaintiff also argues that the ALJ erred in relying on the fact that no treating orthopedic source has stated a need to lie down.  (Pl. Br., 40) (Noting that merely because a physician's notes do not mention frequent lying down is no basis to conclude that lying down is not needed.  The physician's "failure to report the patient's activities of daily living cannot be held against the patient if objective medical findings support the patient's testimony.") (quoting Hinton v. Massanari, 13 F. Appx. 819, 823 (8th Cir. 2001)).  The portion of Hinton quoted in plaintiff's brief states that a plaintiff will not be found incredible merely because of a physician's failure to note plaintiff's daily activities in the physician's treatment notes.   Plaintiff's argument relates to the credibility of a plaintiff's allegations, and says nothing about the weight to be given Dr. Davis's opinion that plaintiff needs to lie down every thirty minutes.  Dr. Davis stated his opinion.  (R. 376).  The ALJ rejected it.  This is not a case where the ALJ relied upon the mere absence of any supporting opinion.  As the ALJ noted, two orthopedic specialists treated plaintiff, both stated an opinion regarding plaintiff's capacities, and neither mentioned any need to lie down.  In fact,

a need to lie down frequently is inconsistent with the orthopedists' stated opinions.  The treating orthopedic specialists' opinions are inconsistent with that of Dr. Davis in this and other respects.  The ALJ did not err in considering and evaluating the orthopedic specialists' opinions and in using those opinions in weighing Dr. Davis's opinion.

Plaintiff argues that the opinions of Drs. Baker, Geis, and Hendler should have been given less weight because they were merely one-time consultive examiners and did not have a treating relationship with plaintiff.  Plaintiff is correct that each of these physicians was only an examining physician.  However, the ALJ acknowledged that fact and, in each case, noted portions of the physicians' opinions which he could not accept because of inconsistencies with record evidence.  This reflects appropriate weighing of the examining physicians' opinions.  The court finds no error in the evaluation of the examining physicians' opinions.

Plaintiff claims it was error for the ALJ to state as a reason for discounting Dr. Davis's opinion that the opinion "appears based entirely upon the claimant's subjective allegations." (Pl. Br., 41) (citing (R. 21)).  Plaintiff argues that Dr. Davis examined plaintiff the day he wrote his opinion,

20

that the ALJ did not cite evidence in the opinion suggesting the opinion was based entirely on subjective allegations, and therefore, the reason given is merely the ALJ's speculation.  The Commissioner argues that the ALJ may reject a treating physician's opinion if the physician's records reflect only the plaintiff's subjective beliefs regarding her disability.  (Comm'r Br., 11) (quoting Hayes v. Callahan, 976 F. Supp. 1391, 1395 (D. Kan. 1997)).

Here, the decision reflects that the ALJ discounted Dr. Davis's opinion, giving six reasons--including that the opinion "appears based entirely upon the claimant's subjective allegations." (R. 21).  The court finds no error in five of the reasons given.  As the Commissioner argues, the court has stated in the past that it is appropriate to discount a treating physician's opinion if his records reflect only the plaintiff's subjective beliefs.  However, Dr. Davis's records reflect his opinion is based on more than merely the subjective beliefs of plaintiff.  Therefore, this stated reason is erroneous.

"In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports." McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002).  Where

21

the ALJ has no evidentiary basis for finding that a treating physician's opinion is based only on plaintiff's subjective complaints, his conclusion to that effect is merely speculation which falls within the prohibition of <u>McGoffin</u>.   <u>Langley v. Barnhart</u>, 373 F.3d 1116, 1121 (10th Cir. 2004).   Such a conclusion must be based upon evidence taken from the physician's records. <u>Victory v. Barnhart</u>, 121 F. App'x 819, 823-24 (10th Cir. 2005). Here, the ALJ does not cite evidence from Dr. Davis's treatment notes or from the medical opinion at issue which supports the conclusion that the opinion is "based entirely upon the claimant's subjective allegations." (R. 21).   In fact, the ALJ's conclusion ignores Dr. Davis's listing of the medical findings which support his opinion (R. 376) and statement that certain opinions are supported by the clinical exams of Drs. Geis and Barey, and himself. (R. 377).   The ALJ erred in speculating that Dr. Davis's opinion was based only on plaintiff's subjective beliefs.

The court does not intend to imply that Dr. Davis's opinion must be accepted.   As discussed above, substantial evidence supports the ALJ's determination that the opinion is not worthy of controlling weight.   Moreover, the court finds the other five reasons given for discounting Dr. Davis's opinion are supported by

substantial evidence in the record.  However, remand is necessary for the Commissioner to properly weigh the medical opinions and explain the proper weight to accord Dr. Davis's opinion.

Plaintiff claims the ALJ should have recontacted Dr. Davis because the ALJ did not consider Dr. Davis's progress notes in their entirety and because the ALJ speculated that the opinion was based on plaintiff's subjective complaints.  On remand, plaintiff may ask the ALJ to recontact Dr. Davis, if appropriate.

Finally, plaintiff complains that the ALJ "ignored giving any weight to the vocational opinion of Bud Langston, MS." (Pl. Br., 43).  She argues that the ALJ never discussed the body of Mr. Langston's report or his conclusion that plaintiff cannot work, and claims, "This is a serious error that deserves consideration." (Pl. Br., 43).  Plaintiff's argument reveals the error upon which it is based.  As plaintiff admits, Mr. Langston is a vocational rehabilitation specialist, not a medical source.  Thus, there is no requirement that his opinion be considered or weighed in the evaluation of medical opinions.  The basis for considering a vocational source (VS) opinion begins at steps four or five after the RFC assessment is made.  The VS may provide information at step four regarding the requirements of plaintiff's past work and

23

at step five regarding work available in the economy to someone
with an RFC as assessed by the ALJ or as hypothesized by the ALJ
or plaintiff's attorney.  Winfrey v. Chater, 92 F.3d 1017, 1025
(10th Cir. 1996).  However, the VS opinion regarding the
availability of work for the plaintiff must be based upon all of
the restrictions found by the Commissioner, because "'[t]estimony
elicited by hypothetical questions that do not relate with
precision all of a claimant's impairments cannot constitute
substantial evidence to support the [Commissioner]'s decision.'"
Gay v. Sullivan, 986 F.2d 1336, 1340 (10th Cir. 1993) (citing
Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991) (quoting
Ekeland v. Bowen, 899 F.2d 719, 722 (8th Cir. 1990))).  Here,
plaintiff attempts to use VS evidence to establish an RFC rather
than to determine whether jobs are available to someone with a
particular RFC.  Plaintiff provides no authority in support of
this use of VS evidence.

The ALJ followed the correct legal standard for evaluating a
treating physician opinion as explained in Watkins, 350 F.3d at
1300-01.  However, remand is necessary for the Commissioner to
properly weigh the facts and medical opinions and properly explain
and justify the weight given to Dr. Davis's opinion as discussed

above.

## V.    The Credibility Determination

Plaintiff claims the ALJ applied the incorrect legal standard to his credibility determination, failed to evaluate the credibility of plaintiff's husband's testimony, and the credibility determination is not supported by substantial evidence in the record.  The court finds that the ALJ properly considered plaintiff's husband's testimony, and applied the correct legal standard to the ALJ's credibility determination, but that remand is necessary for the ALJ to weigh the evidence regarding credibility in light of the factual errors which the Commissioner admits are present in the credibility determination.

The ALJ discussed plaintiff's husband's testimony:

Michael Imlay testified that the claimant alternates from her bed to the chair to the recliner and back to bed, and spends most of her time watching television and resting.

(R. 15).

In 1996 the Tenth Circuit declined an invitation "to adopt a rule requiring an ALJ to make specific written findings of each witness's credibility, particularly where the written decision reflects that the ALJ considered the testimony." Adams v. Chater,

93 F.3d 712, 715 (10th Cir. 1996).  In a case decided recently, the Tenth Circuit explained that where an ALJ makes no mention of third-party testimony and does not refer to the substance of the testimony in the written decision, remand is necessary to clarify whether the ALJ considered the relevant testimony.  Blea v. Barnhart, ___ F.3d ___, ___ slip op, 2006 WL 3001173 at *11 (10th Cir. 2006).  Here, in contrast to the situation in Blea, the ALJ discussed the substance of Mr. Imlay's testimony in the decision. (R. 15).  The ALJ stated he had considered "all of the evidence of record," (R. 12) and "the entire record" (R. 23)in reaching his decision.  Thus, the record reveals the ALJ considered Mr. Imlay's testimony.  As the Tenth Circuit has stated, "our general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter."  Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005).  The court finds no error in a failure to make specific findings regarding Mr. Imlay's testimony.

With regard to the standard for evaluating credibility, the ALJ stated the standard he applied:

> Specifically, when pain is asserted the
> undersigned must determine whether there is a
> [(2)] sufficient nexus with any [(1)]

26

> objective evidence of a condition that could
> reasonably cause the pain alleged.  [(3)] Once
> the connection is found, the undersigned
> weighs that evidence with all other evidence
> in determining the credibility of the claimant
> (Luna v. Bowen 834 F.2d 161 (10th Cir. 1987)).

(R. 18)(numbering added by the court).  The court has added

numbering to the ALJ's decision to illustrate that the formulation

used is essentially identical with the framework presented by the

court in Luna v. Bowen and, in fact, cites to the Luna decision.

The court finds no error in the legal standard applied by the ALJ

in evaluating the credibility of plaintiff's allegations of

disabling symptoms.

Plaintiff also claims, however, that the ALJ's credibility

findings are not supported by substantial evidence in the record.

An ALJ's credibility determinations are generally treated as

binding on review.  Talley v. Sullivan, 908 F.2d 585, 587 (10th

Cir. 1990).  "Credibility determinations are peculiarly the

province of the finder of fact." Diaz v. Sec'y of Health & Human

Serv., 898 F.2d 774, 777 (10th Cir. 1990).  Therefore, in

reviewing the ALJ's credibility determinations, the court will

usually "defer to the ALJ as trier of fact, the individual

optimally positioned to observe and assess witness credibility."

<u>Casias v. Sec'y of Health & Human Serv.</u>, 933 F.2d 799, 801 (10th Cir. 1991).  However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." <u>Huston v. Bowen</u>, 838 F.2d 1125, 1133 (10th Cir. 1988).

Much of plaintiff's argument merely disagrees with the ALJ's view of the evidence and asserts that, seen as plaintiff views it, the evidence does not support the credibility determination.  The mere fact that the ALJ sees the evidence in a different light than plaintiff is of no consequence.  As discussed above, credibility is the province of the fact-finder, and the court may not re-weigh the evidence or substitute its judgment for that of the ALJ. Except as discussed below, and as the Commissioner admits, the court finds no error in the ALJ's reasons for finding plaintiff not credible.

The court quotes two of the reasons given by the ALJ for finding plaintiff's allegations not credible:

> the claimant's testimony that neck pain is now her primary problem is not consistent with her reports to medical sources, which were primarily concerned with shoulder pain.
>
>         . . .

28

> The claimant's workers compensation claim was
> denied because she did not attend the
> scheduled physical therapy.

(R. 19).

The Commissioner admits that the ALJ erred in stating that

plaintiff complained primarily of neck pain, and in stating that

plaintiff's worker's compensation claim was denied because she did

not attend physical therapy.  (Comm'r Br., 9).  These statements

were two of twelve reasons relied upon by the ALJ in finding

plaintiff not credible.

The court may not re-weigh the evidence.  <u>White</u>, 287 F.3d at

905.  It is particularly inappropriate to re-weigh evidence

regarding credibility, because the court was not in a position to

observe and listen to plaintiff's testimony and consider

credibility based upon demeanor, body language, or other visual or

audible cues.

> Because a credibility assessment requires
> consideration of all the factors "in
> combination," [and] when several of the
> factors relied upon by the ALJ are found to be
> unsupported or contradicted by the record, [a
> court is] precluded from weighing the
> remaining factors to determine whether they,
> in themselves, are sufficient to support the
> credibility determination.

<u>Bakalarski v. Apfel</u>, No. 97-1107, 1997 WL 748653, *3 (10th Cir.

Dec. 3, 1997) (emphasis in original)(quoting Huston, 838 F.2d at
1132 n.7 (citation omitted)).  Therefore, remand is necessary for
the ALJ to articulate a proper credibility determination in light
of the evidence in the record.

Because a proper credibility determination may result in an
RFC assessment which is different than that reached below, it
would be premature at this time for the court to consider the step
four and step five errors alleged by plaintiff.  If appropriate,
plaintiff may have the opportunity on remand to make her arguments
regarding step four and step five to the ALJ.

**IT IS THEREFORE RECOMMENDED** that judgment be entered pursuant
to the fourth sentence of 42 U.S.C. § 405(g) REVERSING the
decision below and REMANDING this case for further proceedings
consistent with this opinion.

Copies of this recommendation and report shall be delivered
to counsel of record for the parties.  Pursuant to 28 U.S.C. §
636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the
parties may serve and file written objections to this
recommendation within ten days after being served with a copy.
Failure to timely file objections with the court will be deemed a
waiver of appellate review.  Hill v. SmithKline Beecham Corp., 393

F.3d 1111, 1114 (10th Cir. 2004).

Dated this 9th day of November 2006, at Wichita, Kansas.

s/John Thomas Reid
**JOHN THOMAS REID**
 **United States Magistrate Judge**